Earl F. Malchow and Bernice E. Malchow, Plaintiffs-Appellants, v. Ernest A. Tiarks, et al., Defendants-Appellees.

Ernest A. Tiarks and Enid I. Tiarks, Plaintiffs-Appellees, v. Earl F. Malchow and Bernice E. Malchow, Defendants-Appellants.

Gen. No. 69–96.

Third District.

May 8, 1970.

Rehearing denied June 9, 1970.

John F. Sloan, of Peoria, for appellants.

Leiter, Newlin, Fraser, Parkhurst & McCord, and Theodore Korb, of Peoria, for appellees.

STOUDER, J.

Plaintiffs, Earl Malchow and Bernice Malchow, brought this action in the Circuit Court of Peoria County against Ernest Tiarks and Enid Tiarks, Defendants, seeking the reformation of two deeds or in the alternative, a conveyance of certain property by the defendants. The parties are the owners of adjoining lots and this controversy arises because the Malchows' house encroaches on the property of the Tiarks. Alternatively, the complaint sought damages against Richard Baxter and Floyd Roth, Defendants, based on misrepresentation should the plaintiffs sustain damage on account of the encroachment. Motions for summary judgment were filed by all defendants. Three months later, the Tiarks in a separate action sought a permanent mandatory injunction against the Malchows ordering the removal of that part of the Malchow house which extended onto the Tiarks' property. The cases were considered together in the trial court as well as on this appeal, and for that reason, the parties will be referred to as they are designated in the initial action, although their designation as plaintiffs and defendants were reversed in the second action. The court granted the motions for summary judgment, dismissed plaintiffs' complaint and entered a permanent mandatory injunction as requested. Appeal has been taken from all of such orders.

The facts appear from the pleadings, pretrial depositions of all parties and additional affidavits. In May, 1966, the Tiarks purchased lot 230 from the owner of the subdivision, the lot being then vacant. In November, 1966, the Malchows purchased lot 231, also a vacant lot,

the purchase having been made through Baxter and Roth, sales representatives of the subdivision owner. As shown by the subdivision plat, lots 230 and 231 are located at the south end of a cul-de-sac. The long dimension of the lots is from north to south and it is the more or less northerly line of the lots which fronts on the street (Cobblestone Court). Lot 230 adjoins and is west of lot 231.

According to the Malchows, prior to November, 1966, they were shown lot 231 by Wilma Allenspach, a sales representative of Baxter and Roth. A deep gulley extended over a part of the rear portion of the lot. She showed them the lot lines and four metal stakes one inch in diameter. She showed them a stake on Cobblestone Court farthest to the north and also a stake on Cobblestone Court to the southwest. She showed them a stake at the northeast corner of the lot and pointed out another stake at the top of the gulley on the southwesterly side of the lot. The plat showed that this line extended back into the gulley and was 204 feet from the northwesterly stake in front on Cobblestone Court. The stake at the top of the gulley was about 135 feet back from the northwesterly stake on the corner of Cobblestone Court. According to Malchow, he never did find any stake at the rear in the gulley since it would have been considerable distance from any structure to be built on the lot. Shortly after the lot was purchased in November, 1966, Malchow stated that he stretched a line between the two westerly stakes in order to ascertain the boundary line between his property and that of the Tiarks. He also said at that time he called Wilma Allenspach, the saleslady, asking her about the location of the southwest corner and was informed that if he measured 204 feet from the front stake through the stake at the top of the gulley, he would find the corner.

In May, 1967, Malchow together with his contractor Schielein, went to the lot to lay out the house, at which

time Malchow pointed out to his contractor the stake in the northwest corner on Cobblestone Court and the stake at the top of the gulley as being on the west line of the property. The contractor placed a larger wooden stake in front of the metal stake at the top of the gulley, ran a line to the front stake and then laid out the house so that the closest corner to the boundary line was seven feet therefrom, as required by the subdivision restrictions. Construction of the Malchow house was commenced in May, 1967, and substantially completed by the latter part of August, 1967, at which time plastering and some other inside work remained to be done.

According to the affidavit of Schielein, he talked with Graham, the contractor for Tiarks, early in August. Graham inquired about the stakes and Schielein told him that the stakes had been represented to him as being the west line of the Malchow property. Graham indicated that he would use the line as the boundary and lay out the Tiarks' house with reference thereto. Graham did lay the house out, commenced construction and by the latter part of August he had started framing the house.

During the week preceding August 29, 1967, Mr. Tiarks indicated to Mr. Malchow that he thought there might be some error in the boundary. On August 29, 1967, Tiarks called Malchow and told him that a survey had been made and that the boundary line ran through the corner of Malchow's house and that he, Tiarks, was going to see his attorney. This litigation followed.

Plaintiffs sought reformation of the deeds from the owner of the subdivision to the Tiarks and to themselves, said reformation to describe the lots they each owned as staked out on the ground rather than as platted. If such reformation was not possible, the complaint requested a portion of defendants' property necessary to be added to plaintiffs' property to avoid the encroachment and to comply with side lot building lines be determined and valued and upon payment thereof conveyance of

309

the property be ordered. Defendants' request for a permanent mandatory injunction is based on the theory that plaintiffs are not entitled to the relief which they requested but that on the contrary the defendants are entitled to have the encroachment removed. As indicated earlier, the trial court agreed with the defendants' position and the mandatory injunction was ordered. The trial court also dismissed plaintiffs' complaint for misrepresentation against Baxter and Roth.

Plaintiffs first argue that the undisputed evidence shows that the deeds were based on a mutual mistake of fact and for that reason the trial court erred in declining to reform the deeds. We find no merit to this contention.

The rule regarding reformation of a deed on account of mistake is stated in Schmitt v. Heinz, 5 Ill2d 372, 125 NE2d 457, as follows, "To reform an instrument upon the ground of mistake, the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by mistake, expressed another." When this rule is applied to the facts at bar, it appears that there is a complete absence of any evidence from which it may be inferred that any mistake was made in the deed from the owner of the subdivision to the Tiarks. In May they purchased lot 230, and this is the lot described in the deed and the lot which was both intended to be conveyed and intended to be purchased. Although plaintiffs seek to infer the contrary, there is no evidence from which it can be inferred that the Tiarks purchased their lot with reference to or in reliance upon location of any particular stakes. Absent evidence that the Tiarks considered that the stake at the top of the gulley on what would have been the east line of their lot, was the east line, there can be no mutuality of error.

310

■ Although plaintiffs attempt to attach significance to the fact that each of the lots was purchased from a common owner as in Maes v. Olmsted, 247 Mich 180, 225 NW 583, such rule still requires a mutual mistake, i. e., some failure of the documents conveying title to accurately represent the intention of the parties. No such failure of intention can be attributed to the parties in the case at bar. Korosic v. Pearson, 377 Ill 413, 36 NE2d 744, cited by plaintiffs, illustrates a case where deeds were reformed on account of mutual mistake of fact. The facts justifying the reformation in the Korosic case are so different from those in the case at bar that the reasoning and result are consistent with, and support the conclusion of the trial court on this issue.

Plaintiffs next argue the trial court erred in granting the permanent mandatory injunction and further, that in accord with sound equitable principles, whatever injury defendants may have sustained can be remedied by other appropriate equitable relief.

■ The mandatory injunction is recognized as an extraordinary remedial process which is granted not as a matter of right but in the exercise of sound discretion. It is a writ not regarded with judicial favor and is used only with caution in cases of great necessity. Lyle v. City of Chicago, 357 Ill 41, 191 NE 255.

■ The application of equitable principles to encroachment cases is discussed in Stroup v. Codo, 65 Ill App2d 396, 212 NE2d 518, which concludes, "It is an accepted principle of law that where an encroachment is slight and unintentional and the cost of removing it great, and the corresponding benefit to the adjoining owner is small, and damages can be had, the courts will ordinarily refuse to grant injunctive relief, and will leave the complaining party to his remedy at law. See Pradelt v. Lewis, 297 Ill 374, 130 NE 785." In the application of the foregoing equitable principles, there is no question that a compulsory removal of a portion of plaintiffs'

311

house would cause serious inconvenience and substantial expense, and the corresponding benefit to the defendants would be small. Whether such rule then is applicable depends on the rather narrow issue of whether the encroachment was unintentional, as contended by plaintiffs, or intentional as insisted by defendants. In Stroup v. Codo, supra, the court concluded the encroachment was unintentional where the contractor relied on an erroneous plat. For an encroachment to be intentional, it must be either deliberate or in willful disregard of the rights of the adjoining property owner. Nitterauer v. Pulley, 401 Ill 494, 82 NE2d 643. Such an encroachment will be regarded as deliberate when made after due warning. Ariola v. Nigro, 16 Ill2d 46, 156 NE2d 536. Willful disregard of the adjoining property owner's rights may result from culpable negligence, that is, the failure to take ordinary and reasonable precaution to ascertain the boundary line. Nitterauer v. Pulley, supra.

No contention is made in the instant case that plaintiffs commenced construction of their house with any knowledge that it encroached upon the property of defendants or that the construction of the house was commenced at its location, notwithstanding contrary warnings of defendants. Thus, the only question is whether the plaintiffs took appropriate precautions in locating the boundary lines.

██ We believe from the undisputed facts contained in the documents submitted to the trial court that the encroachment was not the result of willful disregard of defendants' rights. It is undisputed that the boundary line was based on two metal stakes of the kind used to set out boundaries on the ground in the subdivision. Further, plaintiffs believed such stakes to be the boundary line, such belief being based on the representations of the real estate agent whose representations the plaintiffs could have been reasonably expected to believe.

Although these facts might establish the unintentional nature of plaintiffs' conduct, such conclusion finds additional and in our opinion, irrefutable support from defendants' own conduct. What did defendants rely upon to establish the boundary line and lay out their own house? They relied, according to the undisputed affidavit of Schielein, on his representation that he had been told the two stakes were on the boundary line. If defendants' conduct in establishing the boundary line was reasonable, then plaintiffs' conduct was even more reasonable and defendants ought not to be heard to complain. Since we hold that the facts set forth in the documents considered by the trial court failed to support any inference that plaintiffs' conduct was intentional, it therefore follows that the court erred in granting the mandatory injunction. We further believe that in the application of equitable principles, defendants' injury may be adequately relieved by conveyance of or release to the plaintiffs of sufficient area to abate the encroachment upon the payment of reasonable compensation therefor as may be determined by the court.

The last question presented is the propriety of the trial court's action in granting the motion for summary judgment made by Baxter and Roth. The familiar rules relating to the granting and refusing of motions for summary judgment are discussed by each party. The parties are in general agreement that the propriety of the court's action depends on whether or not genuine or triable factual issues are disclosed by the facts and inferences therefrom in the documents considered by the trial court. Patterson v. Stern, 88 Ill App2d 399, 232 NE2d 7, and Buzinski v. Do-All Co., 31 Ill App2d 191, 175 NE2d 577.

As can be concluded from the facts stated in other portions of this opinion, plaintiffs' claim against Baxter and Roth is based on testimony that a saleslady misrep-

resented the location of a metal stake at the top of the gulley as being on the west boundary line of the property.

■ Where one who is selling property takes the responsibility of locating the lot line, he is under a duty to correctly locate it and where purchaser is ignorant of the location, he has a right to rely upon the positive statement and representation, and hold the person making such statement responsible. Lickus v. O'Donnell, 321 Ill App2d 144, 52 NE2d 271. Defendants do not dispute this rule, but argue that the facts as a matter of law show no liability on their part. In particular, they rely on an exculpatory clause in the offer to purchase, signed by plaintiffs, and also on the assertion that plaintiffs had no right to rely on the representation.

■ ■ Subparagraph N of the offer to purchase provided, "The purchaser has personally examined this property and is satisfied as to its condition and all other matters pertaining to it. This proposal is made as a result of said examination and through no representations other than those expressed herein either oral or written." Although such clause purportedly is an exemption from all liability for misrepresentation unless the representation is included in the purchase offer, it is clear from defendants' own argument that such exemption may not be literally applied. The defendants argue that the plaintiffs were shown a plat which included the lot 231, which they purchased, and that the dimensions of the lot as shown by the plat are true and correct. Since the size of the lot or the length of its boundaries was not mentioned in the purchase offer under defendants' interpretation of its contract, what difference would it make if the plat (not a representation in the purchase offer) were true and correct? By representing and describing the lot by its number in the purchase contract, we believe that such representation not only includes reference to the plat, as conceded by defendants, but also

314

the location of the boundary lines as may have been pointed out and established by defendants' agent. We would further observe that we do not see how the exculpatory clause can have any application to a representation which by its nature could not have been included in a written purchase offer. Accordingly, it is our conclusion that the exculpatory provision of the purchase offer was inapplicable to the misrepresentation charged.

 Defendants' remaining argument in support of the action of the trial court is that its sales representative ought not to have been believed, and in any event, what she may have said was immaterial. Their argument in this respect may be summarized by the last observation in their brief which is "Not by the wildest stretch of the imagination could it have been anticipated that the parties would have indulged in such reckless conduct and it is submitted that it would be most unjust to call upon the realtors to compensate them for their imprudence." As matters turned out, it was imprudent for the plaintiffs to have relied on the defendants' agent. However, we do not believe that the facts set forth in the various documents establish defendants' liability or nonliability as a matter of law. It appears from defendants' own argument that triable issues of fact exist regarding the materiality of the representation and whether plaintiffs were entitled to rely upon them.

In summary, we hold one, that no error was committed by the trial court in declining to reform the deed on account of mistake, two, that the evidence is insufficient to support the trial court's award of a mandatory injunction, three, that other equitable relief is available to alleviate defendants' injury, and four, that disposition of plaintiffs' claim for damages resulting from misrepresentation was not appropriately determined by motions for summary judgment, such proceeding revealing that triable issues of fact exist.

315

For the foregoing reasons, the judgments of the Circuit Court of Peoria County are reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Judgment reversed and remanded with directions.

RYAN, P. J. and ALLOY, J., concur.