HAROLD W. BRINKLEY *et al.*, Plaintiffs-Appellants, v. HERMAN BRINKLEY *et al.*, Defendants-Appellees (George Goodwin *et al.*, Plaintiffs and Counterdefendants-Appellees; Brinkley Enterprises, Inc., Defendant and Counterplaintiff-Appellant).

Fifth District   No. 5—87—0308

Opinion filed September 28, 1988.

706

Paul A. Croegaert, of Croegaert & Clark, Ltd., of Olney, for appellants.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs, Harold W. Brinkley and Brinkley Enterprises, Inc., appeal from a judgment entered in two consolidated cases by the circuit court of Crawford County. At issue in those cases was whether plain-

tiffs had the right to install and use a natural gas pipeline under a certain dirt road located in Montgomery Township, Crawford County. Plaintiffs argued that they had such a right because (1) the road in question had become a public highway by prescription pursuant to section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 2—202) and (2) the Montgomery Township road commissioner had granted them a right-of-way under that highway for the pipeline. Following a bench trial, the circuit court rejected plaintiffs' claim. Specifically, it determined that the elements necessary to establish the existence of a public highway by prescriptive right had not been proved and that the right-of-way which plaintiffs had obtained from the township was therefore "for naught." Accordingly, the circuit court denied relief to plaintiffs in cause No. 86—CH—3. In cause No. 85—L—27, it ordered, *inter alia*, that Harold Brinkley and Brinkley Enterprises remove their gas pipeline and restore the land to the condition it was in prior to the pipeline's installation. We affirm the judgment in cause No. 86—CH—3. In cause No. 85—L—27, we affirm in part, vacate in part, and remand.

The record before us indicates that plaintiff Harold Brinkley is in the business of drilling and operating natural gas wells. He engages in this business through a company he owns known as Brinkley Enterprises, Inc., which is also a plaintiff in these proceedings. According to the evidence, plaintiff owned and operated two producing gas wells on what is known as the Sprague Lease in Montgomery Township, Crawford County. In order to sell the gas from these wells, plaintiffs needed to run a pipeline from the wells to a compressor and then on to a natural gas plant owned by Texas Gas. The most direct route for this pipeline ran across land owned by two brothers, George Goodwin and C. Andrew Goodwin. Although an alternate route was available, it was more circuitous, and laying pipe along it would have been far more expensive.

Located on the Goodwins' land were additional natural gas wells which drew from the same gas reservoir as those on the Sprague Lease. The interests in the Goodwin wells were not, however, owned by plaintiffs, but rather by Harold Brinkley's brother, Herman, and the Goodwins. The relationship between these factions was less than cordial. When Harold Brinkley approached one of the Goodwins about the possibility of obtaining an easement across their land for the pipeline he needed to the Texas Gas plant, he was quoted a price which he apparently regarded as extortionate: $5,000 and a 1/32 working interest in the Sprague Lease wells. Harold's rejection of this offer was adamant and profane.

Unable to obtain permission to lay his pipeline, at least not on terms which he found acceptable, Harold sought an alternative means of access across the Goodwins' property. Harold was aware that an old dirt road extended north along the eastern portion of that property. Someone apparently decided that if the road were part of the township's road system, Harold could obtain an easement along it from township authorities. The problem was that there was no recorded documentation that any part of the Goodwins' land had ever been dedicated to the township for use as a road. A theory was therefore developed that the road had become a public highway by prescription under section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 2—202). Wendell Reinbold, then road commissioner for Montgomery Township, was willing to adhere to this theory, and the road became known as Township Road 318A. On behalf of the township, Reinbold then sold Harold the easement he needed. The consideration was $1. Whether Harold was ever required to actually pay the dollar is disputed.

After George Goodwin learned that Harold Brinkley intended to lay a gas pipeline under the road, he sent a letter, dated April 16, 1985, advising Harold to stay off his property. George cautioned Harold that he would regard the installation of the pipeline as a trespass and that if the pipe were installed, he would have no choice "but to take action fo[r] relief." When Harold proceeded with his plans to lay the pipeline, George contacted his attorney and erected a fence across the roadway. In the fall of 1985, George Goodwin removed the fence after being requested to do so by Ronald Ducharme, the township road commissioner who succeeded Wendell Reinbold, but on October 21, 1985, the Goodwins filed suit against Brinkley Enterprises. That suit, designated as cause No. 85—L—27, alleged that by installing and operating the gas pipeline on the Goodwins' land, Brinkley Enterprises was committing a continuing trespass which unlawfully deprived the Goodwins of the "full use and quiet enjoyment" of their property. For their relief, the Goodwins asked that an injunction be issued requiring Brinkley Enterprises to remove the gas pipeline and to repair the damage caused by that removal. The Goodwins also prayed for money damages in a sum in excess of $15,000.

The Goodwins' opposition to the pipeline manifested itself through more than litigation. On October 1, 1985, George Goodwin and Dale Holscher, field supervisor for Oil Field Lease Management, Inc., cut the pipeline using a backhoe. The line, which was severed at three points, was subsequently repaired by Harold Brinkley, only to be broken again on December 7, 1985. In the meantime, the Goodwins sold

a portion of their land to Herman Brinkley. The roadway, and thus Harold's pipeline, crossed this tract. On December 31, 1985, four days after the deed on the tract was recorded, Herman had Dale Holscher return to the site. Holscher, who was accompanied by his brother, then proceeded to tear up the pipeline under Herman's land. After this incident, the pipeline was not repaired again.

Harold Brinkley and Brinkley Enterprises responded to these developments by filing a lawsuit of their own. Their action, designated as cause No. 86—CH—3, named as defendants Herman Brinkley, Dale Holscher, and Oil Field Lease Management, Inc. In that action, plaintiffs sought injunctive relief and compensatory and punitive damages for interference with their pipeline. At the same time, plaintiffs also sought compensatory and punitive damages against the Goodwins through a counterclaim filed in cause No. 85—L—27.

In January of 1986, plaintiffs filed a motion in cause No. 86—CH—3 requesting a preliminary injunction. Following a hearing, the circuit court entered an order on January 13, 1986, temporarily enjoining Herman Brinkley and Dale Holscher from removing or disturbing plaintiffs' gas pipeline. At the same time, the court ordered plaintiffs not to attempt to repair that pipeline. Thereafter, the circuit court consolidated cause No. 86—CH—3 and cause No. 85—L—27 for a hearing on the merits. That hearing was conducted in July of 1986. Based on the evidence adduced at the hearing and the evidence previously presented at the hearing on the preliminary injunction, the circuit court entered a written judgment in which it found that the road in question had not become a public highway by prescription and that the easement over that road which Harold Brinkley purported to have obtained from township authorities was "for naught." Accordingly, the court denied relief to Harold and Brinkley Enterprises, Inc. in cause No. 86—CH—3, and in cause No. 85—L—27 it ordered those parties to remove their gas pipeline from the land owned by the Goodwins and by Herman Brinkley and to restore the land where the pipeline had been installed to its original condition. The question of damages was continued for further hearing.

Harold Brinkley and Brinkley Enterprises then filed a motion to vacate or modify the judgment. In denying that motion, the circuit court made an express written finding that there was no reason to delay enforcement or appeal of the judgment. This appeal followed. As grounds for their appeal, Harold and Brinkley Enterprises argue that the circuit court's determination that the road in question had not become a public highway by prescriptive right is contrary to the manifest weight of the evidence. In the alternative, they contend that the

circuit court should have awarded only damages instead of granting the equitable remedy of a mandatory injunction.

■ Pursuant to section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 2—202), a private road may become a public highway by prescription if it is used by the public as a highway for 15 years. To establish a public highway by prescription under this statute, one must show that the use by the public was adverse, under a claim of right, continuous and uninterrupted, with the knowledge of the owner, but without his consent. (*People ex rel. Kenney v. City of Goreville* (1987), 154 Ill. App. 3d 1091, 1097, 507 N.E.2d 1247, 1251.) The determination as to whether a particular way is a public highway by prescription is a finding of fact which will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. *Village of Cypress v. Green* (1987), 154 Ill. App. 3d 119, 126, 506 N.E.2d 762, 767.

■ As this court has previously noted, highways are generally used to travel from one locality to another. (*Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 98, 332 N.E.2d 568, 573.) The road here leads nowhere. It is little more than a narrow, dirt passageway running alongside a body of water which had once been part of the Wabash River. The road apparently ends at the water's edge and does not connect up there with any other township, county, State or Federal roadway.

For part of the year, the road is actually submerged and becomes completely impassable. Although Harold Brinkley and Brinkley Enterprises elicited testimony from various witnesses that the road is and has been routinely used by members of the public, other testimony indicated that it has actually been used only by farmers in the area, hunters, and fishermen, as well as by the landowners themselves. The circuit court heard evidence that some of these individuals have expressly asked permission to use the land, and George Goodwin testified that he has occasionally refused permission for use of the road to those who had no business in the area.

■ As we have indicated, no documentary evidence was adduced indicating that the road had ever been dedicated to the township. A map was found on which the road was designated as Township Road 318A, and Wendell Reinbold and Ronald Ducharme, each of whom had served as township road commissioner, claimed that the township did maintenance work on the road. Maintenance of a road at public expense is one indicia that the road is a public highway. (*Meade v. Commonwealth Edison Co.* (1977), 48 Ill. App. 3d 312, 314, 362 N.E.2d 779, 781.) The evidence on this issue, however, was far from consistent. The Goodwins and Herman Brinkley denied ever having seen

maintenance done on the road by the township. Indeed, the road appears to have received little maintenance from anyone. It was completely unpaved. It had no signs or drainage ditches alongside it. Andrew Goodwin stated that he has on occasion actually planted crops in the roadbed. The evidence suggests that the township had replaced a bridge at the end of the road with a metal culvert, but Dale Holscher testified that he did not observe the township do any maintenance work on the road itself until after this litigation commenced.

■ The evidence established that the road was assessed and taxed as private property, not a public road. While such a fact does not compel a finding that the road is not a public highway, it is a factor to be considered. 48 Ill. App. 3d at 314, 362 N.E.2d at 781.

■ Another factor supporting the conclusion that the road is not a public highway is its condition. The condition of a road often indicates whether the public at large has claimed the right to travel upon it. (48 Ill. App. 3d at 314, 362 N.E.2d at 781.) Here, as we have noted, the road was not paved. It was made only of dirt and became a muddy lane when it rained. For part of the year, the road was under water. It is riddled with ruts and chuck holes. In the spring, as the ground thaws, a four-wheel drive vehicle is necessary to travel the road. A similar dirt road extends along the same body of water in the opposite direction. Apparently the only thing that differentiates it from the road in question here is that it does not have a gas pipeline running beneath it. No claim has been made that this other road might also be part of the township road system.

■ Viewing the record as a whole, the most one can say on behalf of Harold Brinkley and Brinkley Enterprises is that there was some evidence to support their position. The conflicts in the evidence were, however, for the trial court to resolve, for it was in a superior position to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence. (*Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 407, 489 N.E.2d 1170, 1174.) The circuit court's judgment indicates that it found more credible the testimony adduced on behalf of the Goodwins and Herman Brinkley and that it weighed their evidence more heavily. We see no basis for second-guessing the trial court's determination. In light of the foregoing facts, we believe that there is ample support for its conclusion that the road was not public.

■ Harold Brinkley and Brinkley Enterprises argue, in the alternative, that the only remedy which was appropriate in cause No. 85—L—27 was an award of money damages and that the circuit court erred in granting injunctive relief. We disagree. The general rule in

Illinois is that where one landowner's construction encroaches upon the land of an adjoining landowner, courts will refuse injunctive relief and leave the complaining party to his remedy at law (*i.e.*, damages), provided that the encroachment is slight and unintentional, the cost of removing it is great, and the corresponding benefit to the adjoining owner of removal is small. (*Calhoon v. Communications Systems Construction, Inc.* (1986), 140 Ill. App. 3d 1012, 1016, 489 N.E.2d 23, 26.) On the other hand, one who knows of a claim to land which he proposes to use as his own proceeds at his peril if he goes forward in the face of protest from the claimant and places structures upon the land. 140 Ill. App. 3d 1012, 1016, 489 N.E.2d 23, 26.

■ In this case, Harold Brinkley and Brinkley Enterprises purported to justify their encroachment by relying upon the easement which they obtained from township authorities, and they assert that removal of the pipeline now would entail great expense. We believe, however, that there was an adequate basis in the record for the trial court to have found that this purported easement was simply an artifice by which Harold Brinkley and Brinkley Enterprises hoped to thwart the landowner's legitimate property interests in order to advance their own economic objectives, *i.e.*, securing a transmission line from their natural gas wells at the lowest possible cost. In any case, mere belief in one's right, no matter how honestly and reasonably entertained, is no justification for preventing removal of the offending structure, nor is great expense of removal, when there has been a deliberate invasion of a party's title to real estate, and protest, followed by resort to the courts to ascertain the legal rights of the parties. (140 Ill. App. 3d at 1016-17, 489 N.E.2d at 26.) That is precisely what occurred here.

*Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 354 N.E.2d 353, one of the primary cases cited by plaintiffs, is inapposite. There, the encroachment, a three–quarter-inch underground television cable and an aboveground television cable box, were located within land subject to a highway easement created by prescription, and no evidence was presented that the cable installation would interfere with use of the land. Here, as we have just discussed, the circuit court properly concluded that no public road by prescription existed. Moreover, weather and other environmental factors can cause pipelines such as this to eventually work themselves to the surface, a circumstance which, if it occurred in this case, would certainly interfere with the use of the property, whether that use was as a road or simply crop land.

Plaintiffs also look for support in *Neely v. Coffey* (1980), 81 Ill. 2d

439, 410 N.E.2d 839, but that case is inapposite as well. There, unlike the case *sub judice*, a public highway easement by prescription was shown to exist and the encroachment, a sewer line, had been installed before the parties complaining of the encroachment sought to obtain title to the land in question. Here, by contrast, the Goodwins already owned the property when Harold Brinkley and Brinkley Enterprises first attempted to install their gas pipeline.

■ Harold Brinkley and Brinkley Enterprises next argue that because the Goodwins and Herman Brinkley utilized self-help to cut the gas pipeline, they come before the court with unclean hands and should therefore be precluded from obtaining the equitable remedy of a mandatory injunction. We disagree. The doctrine of unclean hands is not favored, and whether it should be applied in a given case is a matter committed to the sound discretion of the trial court. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 501, 422 N.E.2d 1166, 1171.) Under the circumstances present here, we cannot say that the trial court abused its discretion when it refused to apply the doctrine of unclean hands and granted injunctive relief.

■ Although we believe that the issuance of a mandatory injunction was proper, we must conclude that the circuit court should not have ordered Harold Brinkley and Brinkley Enterprises to remove the pipeline from the land owned by Herman Brinkley. Herman Brinkley appeared in these proceedings only as a defendant in cause No. 86—CH—3, but he filed no counterclaim for injunctive or any other type of relief in that case. As for cause No. 85—L—27, the suit in which injunctive relief was sought by the Goodwins, Herman never sought or obtained leave to join as a plaintiff. Thus, Herman himself never asserted any type of claim against Harold or Brinkley Enterprises upon which an award of injunctive relief could be predicated, and we know of no legal principle upon which relief could be obtained on his behalf by the Goodwins. Once the Goodwins sold Herman his land, they ceased to have a justiciable interest in seeing that the pipeline under that land was removed. To the extent that the circuit court's judgment in No. 85—L—27 purports to order Harold Brinkley and Brinkley Enterprises to remove the pipeline from the land owned by Herman Brinkley and to restore that land to its original condition, the judgment must therefore be vacated.

■ Before concluding our discussion, there is one further matter which we must address. Harold Brinkley and Brinkley Enterprises have moved this court to strike the brief filed by Herman Brinkley, Dale Holscher, Oil Field Lease Management, Inc., George Goodwin and C. Andrew Goodwin because it improperly cites *Cannady v.*

*Cornwell*, No. 4—85—0144, an order entered by the Fourth District Appellate Court pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23). Rule 23 expressly provides that orders issued pursuant to that rule are not precedential and may be invoked only to support contentions such as double jeopardy, *res judicata*, collateral estoppel, or law of the case, none of which are applicable here. Accordingly, we agree that *Cannady* should not have been cited. We note, however, that *Cannady* was invoked by the trial court in its judgment and was discussed by Harold Brinkley and Brinkley Enterprises in their own brief. The reference by the Goodwins, Herman Brinkley, and the others to this case was obviously included simply in order to respond to these previous citations. Under these circumstances, we think it would be wholly unjust to order that their brief be stricken in its entirety. In our view, the purposes of Rule 23 will be amply satisfied simply by ordering that the particular references to *Cannady* be stricken. The motion filed by Harold Brinkley and Brinkley Enterprises is therefore denied in part and granted in part.

For the foregoing reasons, the judgment of the circuit court of Crawford County in cause No. 86—CH—3 is affirmed. The circuit court's judgment in cause No. 85—L—27 is affirmed in part, vacated in part and remanded for further proceedings consistent with this order. The motion by Harold Brinkley and Brinkley Enterprises to strike is denied in part and granted in part.

Judgment in cause No. 86—CH—3, affirmed.

Judgment in cause No. 85—L—27, affirmed in part; vacated in part and remanded.

Motion to strike denied in part and granted in part.

CALVO and WELCH, JJ., concur.