CRAIN ENTERPRISES, INC., *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF MOUND CITY, Defendant-Appellee (Consolidated Grain and Barge Company, Defendant-Appellant and Cross-Appellee).

Fifth District   No. 5—87—0296

Opinion filed October 11, 1989.

A. Ben Mitchell, of Musick & Mitchell, P.C., of Mt. Vernon, for appellant.

Harris, Lambert & Wilson, of Marion, and W.C. Spomer, of Cairo, for appellees Crain Enterprises, Inc., James W. Crain, Stephen Crain, Jeffrey Crain, and Tom Jennings.

Mark H. Clarke, of Cairo, for appellee City of Mound City.

JUSTICE CHAPMAN delivered the opinion of the court:

Defendant Consolidated Grain and Barge Company (Consolidated), successor in interest to Behimer & Kissner, appeals from an order of the circuit court of Pulaski County granting injunctive relief to the plaintiffs, Crain Enterprises, Inc., James W. Crain, Stephen Crain, Jeffrey Crain, and Tom Jennings (Crain). The injunction requires defendant Consolidated to remove certain obstructions, more specifically railroad tracks and related structures, which it placed on the west one-half of Commercial Avenue in Mound City, Illinois, because they interfered with plaintiffs' easement rights. Crain has cross-appealed the finding of the trial court that certain ordinances enacted

by defendant Mound City (the city) are valid exercises of its home rule powers.

While the facts of this case are largely undisputed, the procedural history is extensive. We will relate only so much of that history as is necessary for resolution of the issues involved. Crain Enterprises owns a manufacturing facility located at the intersection of Commercial Avenue and First Avenue in Mound City. Its warehouse complex is also on Commercial Avenue, approximately 3,000 feet north of the manufacturing facility. In 1980 defendant Consolidated became interested in constructing a grain elevator and transportation facility in Mound City. The purpose of this facility is to transfer bulk commodities such as grain or fertilizer from truck or rail transportation into barges, or vice versa. Consolidated determined that the only feasible site for this facility included property parallel and adjacent to the west half of Commercial Avenue. In other words, the Consolidated facility abuts Commercial Avenue on the west, while the Crain facility abuts Commercial Avenue on the east. Commercial Avenue had been a public street for over 100 years. The east half of Commercial Avenue contained two sets of railroad tracks which had been in place for over 60 years. Because these tracks were placed on and parallel to Commercial Avenue, the east half of Commercial Avenue was not used as a public thoroughfare, nor was it suitable for such use. Consolidated determined that it would be necessary, if its project was to succeed, to place three additional rail lines on the west half of Commercial Avenue, thereby closing the street to vehicular traffic.

After being approached by Consolidated concerning its need to close Commercial Avenue, the city enacted the three ordinances that are the subject matter of Crain's cross-appeal. Ordinance No. 589 granted Consolidated a railroad franchise and leased the west 44 feet of Commercial Avenue to Consolidated to implement the franchise. Ordinance No. 612 vacated certain side streets to permit the installation of Consolidated's grain elevator. Ordinance No. 625 vacated the west 44 feet of Commercial Avenue as a public street.

Prior to passage of the ordinances, James Crain appeared at the city council meetings to object to the closing of Commercial Avenue. Crain's objections were: (1) that ordinance No. 589 was in violation of the street railway act because it would close Commercial Avenue to vehicles and pedestrians; (2) the ordinances were for a private purpose; (3) the ordinances would injure his company by restricting ingress and egress and by increasing rail traffic on the street; and (4) his own plans for business expansion would be stifled.

Despite the plaintiffs' objections, on January 6, 1981, Mound City

enacted ordinance No. 589, a franchise ordinance granting Consolidated the right to construct and operate railway lines over the west half of Commercial Avenue. Crain filed a complaint on April 1, 1981 (cause No. 81—CH—2), seeking to enjoin the proposed railway and to have ordinance No. 589 declared invalid. In July of 1981 Consolidated began construction of the railway, and Crain obtained a temporary restraining order on July 14, which was dissolved on July 23. Consolidated resumed construction, and on September 15, 1981, the trial court entered a final order denying a preliminary injunction and dismissing Crain's complaint with prejudice. Plaintiffs appealed to this court, arguing that they were entitled to amend their pleadings as a matter of right. On November 3, 1982, this court entered an order reversing the trial court and remanding with instructions to permit Crain leave to file an amended complaint. *Crain Enterprises, Inc. v. City of Mound City* (1982), 109 Ill. App. 3d 1223, 451 N.E.2d 2045 (unpublished Rule 23 order).

After remand, the trial court entered an order consolidating cause Nos. 81—CH—2 and 81—MR—15. Cause No. 81—MR—15 had been initiated by Bulk Services, a competitor and neighbor of Consolidated, on December 3, 1981. In that complaint Bulk Services alleged that certain actions of Consolidated relating to the removal of a portion of the Conrail track on Commercial Avenue would injure Bulk Services' business and it requested that the trial court enter a temporary restraining order preventing Consolidated from cutting or otherwise interfering with the railroad track. The Bulk Services cause of action was dismissed based upon a stipulation between the parties. Prior to the dismissal, however, Crain filed a motion to intervene in cause No. 81—MR—15, maintaining that the actions of Consolidated, as alleged in the Bulk Services' complaint, would also irreparably damage them. Accordingly, at the time of the order which consolidated cause Nos. 81—CH—2 and 81—MR—15, Crain's claim was the only remaining cause of action in No. 81—MR—15.

In the meantime, Consolidated had completed the railway and siding as well as other construction, including a seed warehouse, an office building, and two grain silos. In June of 1983, the city passed ordinance Nos. 612 and 625, which vacated certain side streets and the west 44 feet of Commercial Avenue. Plaintiffs amended their complaint in November of 1983 and in December added count II, seeking to have ordinance No. 625 declared void. Crain also instituted an additional lawsuit, cause No. 81—MC—1, alleging that ordinance No. 612 was *ultra vires* because it was enacted for Consolidated's exclusive use and for private purposes. By August of 1984 Consolidated com-

pleted construction of its facility. The total cost of the project was approximately $7.5 million. In May of 1985 plaintiffs amended their complaint and added count III, alleging that they had an easement right of access along Commercial Avenue based upon a plat originally recorded in 1856. A second count was also added to the complaint in cause No. 81—MC—1 in which plaintiffs alleged that they had an easement in the streets and alleys conveyed by ordinance No. 612 pursuant to the same recorded plat.

The trial began on July 8, 1985, and concluded on July 12. On August 11, 1986, the trial court entered its judgment order and found: (1) that ordinance Nos. 589, 612 and 625 were legitimate exercises of the powers of a home rule municipality and served a substantial public purpose and provided a substantial public benefit; (2) Crain had a private right of easement, which arose from the recorded plat, over the vacated streets for ingress and egress to its property abutting those streets; (3) the structures and tracks placed upon the vacated streets constituted a nuisance, subject to abatement, to the extent that they deprived the plaintiffs of their private right to use the streets for ingress and egress to their property, and Consolidated was therefore required to remove the obstructions; (4) that the loss to the public from the issuance of an injunction, including the benefits derived from an annual payroll in excess of $1 million, utility taxes in excess of $15,000, and recapture of $400,000 plus interest in grant monies clearly exceeded the benefit to be derived by the plaintiffs; and (5) the court was not permitted to consider the public interest or balance the equities between the parties because the actions of Consolidated were intentional in starting, continuing, and completing construction after notice by the plaintiffs at public meetings prior to the enactment of ordinance No. 589 that the closing of Commercial Avenue would interfere with Crain's ability to travel the streets sought to be closed, and in continuing and completing construction of the project after the filing of cause No. 81—MC—1 on April 1, 1981, challenged the legal authority of the city to enact ordinance No. 589. Defendant Consolidated filed a post-trial motion on September 15, 1986, which was denied by the trial court on March 26, 1987. Consolidated now appeals the trial court's grant of injunctive relief to the plaintiffs, and the plaintiffs have cross-appealed from the finding by the court that the ordinances in question were valid.

■ We first address the issue of the validity of ordinance Nos. 589, 612, and 625. As previously stated, ordinance No. 589 granted defendant Consolidated a franchise to construct and operate railway lines over the west half of Commercial Avenue. The plaintiffs contend

that ordinance No. 625, which subsequently vacated the west half of Commercial Avenue, effectively repealed ordinance No. 589, notwithstanding a provision in ordinance No. 625 that ordinance No. 589 was to remain in full force and effect. Plaintiffs maintain that a franchise ordinance is incompatible with a vacation ordinance and both cannot cover the same subject matter at the same time. We do not agree. In vacating a portion of Commercial Avenue which abutted Consolidated's land, ordinance No. 625 effected a conveyance of that land to Consolidated. This conveyance was, by its express terms, subject to the terms of the prior franchise agreement. The franchise ordinance, in turn, set forth the rights, duties, and obligations of the parties with respect to the construction, maintenance, and operation of the railway. We do not find these two ordinances to be incompatible.

Plaintiffs next argue that ordinance No. 589 is invalid because a municipality has no power to grant the exclusive use or control of a public thoroughfare to a private person for any private purpose. (*Greenlee Foundry Co. v. Borin Art Products Corp.* (1942), 379 Ill. 494, 41 N.E.2d 532; *Gerstley v. Globe Wernicke Co.* (1930), 340 Ill. 270, 172 N.E. 829; *General Electric Ry. Co. v. Chicago & Western Indiana R.R. Co.* (1900), 184 Ill. 588, 56 N.E. 963; Ill. Rev. Stat. 1985, ch. 131¼, par. 1 (authorizing the laying of railroad tracks in streets "in such manner as not to unnecessarily obstruct the public use of such street").) Plaintiffs also contend that ordinance Nos. 612 and 625 are invalid because they were enacted for the private benefit of defendant Consolidated without any showing that the public interest was served by vacation of the streets and alleys. Defendants Mound City and Consolidated maintain, and the trial court found, that the ordinances were a legitimate exercise of the city's home rule powers. We agree.

■ Article VII, section 6(a) of the 1970 Illinois Constitution granted broad powers to home rule units of local government:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

Furthermore, article VII, section 6(m), states that the powers and functions of home rule units are to be liberally construed. In *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 451 N.E.2d 837, the Illinois Supreme Court explained the two-part test to be used in determining the validity of an ordinance passed by a home rule unit. First,

the subject matter of the ordinance must pertain to the city's government and affairs. If it does, then it is necessary to determine whether the ordinance is preempted by State regulation of the subject matter.

■■ We find that the regulation and vacation of streets and alleys located wholly within the borders of Mound City, which do not form a link in a State highway, are matters which pertain to the city's government and affairs. While we acknowledge that some language in the cases cited by the plaintiffs indicates that the State has an interest in a city's streets (see *People's Gas Light & Coke Co. v. City of Chicago* (1953), 413 Ill. 457, 464, 109 N.E.2d 777, 781 (the "right of the people in the streets and highways of the State *** is a paramount right. The municipality cannot *** perform anything in derogation of this right of the sovereign people, nor may the city permit any uses or encroachments which are unreasonable and against the public interest"); *People ex rel. Hill v. Eakin* (1943), 383 Ill. 383, 391, 50 N.E.2d 474, 478 ("[t]he fee in streets and alleys is vested in the local municipality in trust for all the citizens of the State and not merely for local use")), we note that those cases were decided long before the adoption of the 1970 Constitution. We therefore do not find them to be dispositive of the issue before us. Mound City passed the ordinances in question to stimulate economic development, provide an additional tax base for the city, and provide local employment. Plaintiffs do not deny that the city was beset by severe economic problems: an unemployment rate which was three times the State average, substandard housing, and a large percentage of residents with below average incomes. We believe that Mound City acted well within the limits of its home rule powers in enacting ordinance Nos. 589, 612 and 625.

Nor do we find persuasive the plaintiffs' argument that the ordinances are outside the city's home rule powers because they deal with real property. Plaintiffs quote the following language in support of this argument:

"[T]he powers of home-rule units relate to their own problems, not to those of the state or nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities." Ill. Ann. Stat., 1970 Const., art. VII, §6, Constitutional Commentary, at 23 (Smith-Hurd 1971).

In *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 451 N.E.2d 837, our supreme court addressed the same argument in the context of Carbondale's use of its eminent domain power for the purpose of

redevelopment of its business district. The court stated:

"We do not believe that the inclusion of real property law in the comments as to the matters to which home rule powers should not extend proscribes a home rule eminent domain ordinance. It is apparent that the language quoted in the context of the comments was a further clarification in leaving to the State those traditional areas of the law that are of statewide concern. Those comments reflect an intention that a divorce decree entered in Chicago will be honored in Waukegan, a contract signed in Evanston will not require additional consideration to constitute a valid contract in Peoria, and what is essential for a valid conveyance of a parcel of land in Joliet is also essential if the land is to be conveyed in Kankakee." (*Yehling*, 96 Ill. 2d at 499, 451 N.E.2d at 839.)

Similarly, we do not believe that the regulation and vacation of the streets and alleys of Mound City are matters of real property law "which are generally recognized as falling within the competence of State rather than local authorities."

■ We also find that the ordinances in question are not preempted by State regulation of the subject matter. Plaintiffs argue that the placement of railways in streets is governed by section 11—90—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—90—1) and section 3 of "An Act in regard to street railroads" (Ill. Rev. Stat. 1987, ch. 131¼, par. 3). Both of these statutory provisions were enacted prior to 1970, however, and it is well settled that to restrict the home rule power, a statute must have been enacted subsequent to the adoption of our Constitution, and a home rule unit's power supersedes any conflicting pre-1970 legislation. *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553; *City of Carbondale ex rel. Ham v. Eckert* (1979), 76 Ill. App. 3d 881, 395 N.E.2d 607.

■ Plaintiffs argue most strenuously, however, that ordinance Nos. 612 and 625 are invalid because they were adopted for the private benefit of Consolidated and without any showing that the public interest was served by vacation of the streets and alleys. However, "[i]f there is any substantial showing in the record that the public interest will be served by vacating or altering a street or alley, the ordinance is within the power of the council, no matter how much or how little private parties may be benefited thereby." *People ex rel. Sharp v. City of Chicago* (1958), 13 Ill. 2d 157, 160, 148 N.E.2d 481, 483.

It is apparent from the record that the ordinances in question were enacted at Consolidated's urging to enable it to complete its fa-

cility. It is also apparent that Consolidated's presence in Mound City has provided substantial benefits to its citizens by way of improvements, employment, and increased tax revenues. We believe, therefore, that there is sufficient evidence that the ordinances as enacted were in the public interest (*cf. People ex rel. City of Urbana v. Paley* (1977), 68 Ill. 2d 62, 75, 368 N.E.2d 915, 921 (finding that city's plan to issue bonds to finance urban redevelopment satisfied the public purpose requirement of article VIII, section 1(a), of the Illinois Constitution, and stating that the "[s]timulation of commercial growth and removal of economic stagnation are also objectives which enhance the public weal"); *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807 (legislation intended to alleviate conditions of unemployment and promote economic development is in the public interest)). In addition, because we find that the ordinances in question are valid legislative acts, we hold that they are not, as plaintiffs contend, arbitrary and unreasonable, nor do they deprive plaintiffs of their property without due process. The plaintiffs have not disputed the sufficiency of the procedures employed in adopting the ordinances. The record shows that all interested persons received notice of the proposed ordinances and were given the opportunity to be heard.

■ Plaintiffs' final contention is that ordinance No. 625 did not specifically vacate the portion of Second Street lying east of the west right-of-way line of Commercial Avenue, and therefore, Second Street should remain open. Plaintiffs' argument apparently refers to the intersection of Second Street and Commercial Avenue. When two streets intersect, the area within the intersection is simultaneously part of each street. Plaintiffs seem to contend that while this area was vacated insofar as it constituted a part of Commercial Avenue, that portion of the street which included Second Street was not vacated. We agree with the trial court that the description of the property to be vacated by the ordinance, by reference to metes and bounds, effectively vacated all streets within the area described. In summary, we affirm the trial court's finding that ordinance Nos. 589, 612 and 625 are valid.

■ We now consider the claim of defendant Consolidated that the trial court erred in issuing a mandatory injunction requiring removal of railroad tracks and other structures on Commercial Avenue. The court found that the plaintiffs have a private right of easement over the vacated streets for ingress and egress to their property based upon a plat originally recorded in 1856, and that the tracks and structures placed upon those streets by Consolidated constituted a nui-

sance subject to abatement. Defendant Consolidated offers a number of arguments in support of its position that injunctive relief was improper, which we will address shortly. First, however, we consider Consolidated's argument that the plaintiffs' claim to a private easement is defeated by Mound City's use of its discretionary power to regulate its streets. Consolidated contends that the city has the exclusive discretion to regulate the use of public streets without regard to any private easement rights. Defendant points out that an abutting property owner's right of access to a public street "is subject, nevertheless, to the right of the State to regulate and control the public highway for the benefit of the public even though the abutter may be inconvenienced." (*Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 82, 169 N.E.2d 360, 362.) However, as Consolidated itself admits:

> "There are two rules of law as to the rights of property owners in the platted streets: First, the rule(s) in actions against public authorities, which are generally vested by law with discretion in such matters; and, second, the rule(s) in actions against the grantor, his privies, and other individuals—*i.e.*, involving *private rights*." (Emphasis in original.) *Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 806, 473 N.E.2d 78, 85-86.

Consolidated asserts that the plaintiffs' position is akin to that of the plaintiffs in *First National Bank v. City of Chicago Heights* (1978), 63 Ill. App. 3d 963, 381 N.E.2d 446, where abutting landowners sought to prevent the city from obstructing their access to Wilson Avenue, a platted and dedicated street which had never been improved or opened by the city. The trial court barred the city from obstructing the plaintiffs' use of Wilson Avenue and the appellate court reversed.

> "The decision to open a street is a discretionary function, assigned by law to a municipality alone. *** There is no showing here that the City abused its discretion in not opening Wilson Avenue, and concomitant to this exclusive discretion, the City had a right to prevent the plaintiffs' unauthorized opening of and access to it." *First National Bank*, 63 Ill. App. 3d at 968, 381 N.E.2d at 450.

Consolidated maintains that since a city has exclusive discretion not to open a street, it should have the same discretion to close a street. The *First National Bank* court, however, expressly distinguished the situation before it from those cases where a street had already been opened to the public or was in longtime use. More fundamentally, Consolidated refuses to recognize the difference between an action by a private party against a governmental body over the regu-

lation of its streets, and an action by the same private party against another private party for interference with a private easement right. As our supreme court stated long ago:

> " 'There is an essential and an inherent difference between the private proprietary rights of the abutting owner and the rights of the public as represented by the municipality. The municipal authorities cannot transfer rights which the municipality does not possess, and the easement of access is a private right entirely distinct from that of the public. As the easement of access is a private right, it remains in the owner and does not pass under a grant of the right of occupancy made by the municipal corporation.' " *Hill v. Kimball* (1915), 269 Ill. 398, 406-07, 110 N.E. 18, 22, quoting 2 Elliott, Roads & Streets §891 (3d ed.).

Ordinance No. 589, by which Mound City granted the defendant a railroad franchise, was, as we have held, a valid use of the city's home rule powers to regulate its streets. The ordinance did not, however, deprive the plaintiffs of their right to bring suit against Consolidated, nor did it purport to settle the interests of private claimants in the street. Whether the city could have built the railroad facility and then leased it to Consolidated, as the defendant suggests, or whether the city could have exercised its eminent domain power to condemn the plaintiffs' easement rights, are not questions presented by this case. The city did neither of these. Therefore, this case is governed by the general rules concerning interference with the easement rights of an abutting landowner by a private party, as illustrated by *Cook v. Mighell Construction Co.* (1976), 40 Ill. App. 3d 1032, 353 N.E.2d 43.

In *Cook* the defendant construction company, which owned property on both sides of a vacated city street, erected a barrier across the street. The trial court ordered the barrier removed, and the appellate court affirmed, finding:

> "[W]here the owners' rights are derived from the platting of a subdivision and where the street or a portion thereof is vacated by the municipality, the property owners abutting the vacated street, and those seeking access thereto, have an easement of access to their properties which is not extinguished by the action of the municipality in vacating the street in question." *Cook*, 40 Ill. App. 3d at 1038, 353 N.E.2d at 48.

We do not find Consolidated's attempt to distinguish *Cook*, on the basis that in *Cook* the municipality disagreed with the defendant's activities, whereas here the city gave its approval, to be persuasive. *Cook* held that an abutting landowner's easement of access is not ex-

tinguished by the actions of a municipality in vacating a street. We hold that the plaintiffs' easement of access in the instant case was not extinguished by the actions of Mound City in granting Consolidated a railroad franchise or in vacating Commercial Avenue, absent any affirmative action by the city to condemn the plaintiff's easement rights. We note parenthetically that, in its briefs, Consolidated does not dispute the trial court's finding that plaintiffs have a private easement of access by virtue of the 1856 plat. We therefore assume, without deciding, the correctness of the court's finding, although we are not convinced that this is a settled area of law in Illinois (see *Rexroat v. Thorell* (1982), 89 Ill. 2d 221, 228, 230, 433 N.E.2d 235, 238-39, *cert. denied* (1982), 459 U.S. 837, 74 L. Ed. 2d 79, 103 S. Ct. 83 (where the Illinois Supreme Court reversed a finding by the appellate court that the abandonment of a public roadway created a private easement in the road benefiting nearby land because "an easement by implication is not sanctioned if available alternatives affording reasonable means of ingress and egress exist." In reviewing the authorities, the court stated that "many courts have held that a private easement arises in a public highway following its vacation or abandonment from the mere fact that the landowner's property abuts thereon. [Citations.] Although title to the land vests in the owner of the fee, it is subject to the rights other landowners may have in the street as the necessary means of access to their property. [Citations.] *It is thus recognized that the only easements which survive or arise are those reasonably necessary for means of ingress and egress.*" (Emphasis added.))).

■■ We next consider defendant Consolidated's assertion that the plaintiffs' claim is barred by the equitable doctrine of *laches*. Consolidated correctly points out that the doctrine of *laches* applies not only to the commencement of litigation, but also to the conduct of that litigation.

" 'Negligence in the prosecution of a suit after its commencement may bar relief. The mere institution of a suit does not of itself relieve a person from the operation of the rule of laches; if he fails to prosecute his suit diligently the consequences are the same as though no suit had been begun.' " *Trustees of Schools of Township No. 38 North v. City of Chicago* (1941), 308 Ill. App. 391, 400-01, 32 N.E.2d 180, 184, quoting 21 C.J. 215-16, citing *Thomas v. Van Meter* (1896), 164 Ill. 304.

Defendant's *laches* argument is based upon the following series of events:

September 15, 1981: plaintiffs' motion for preliminary injunc-

|                    | tion is denied and their claim is dismissed on the pleadings. |
| October 13, 1981:  | plaintiffs file notice of appeal. |
| November 3, 1982:  | this court reverses judgment on the pleadings and remands with instructions to allow plaintiffs to amend their complaint. |
| November 21, 1983: | plaintiffs file amended complaint. |
| February 5, 1985:  | defendant files its answer and affirmative defenses to plaintiffs' amended complaint. |
| February 7, 1985:  | plaintiffs file their response to defendant's affirmative defenses. |
| February 26, 1985: | plaintiffs file various discovery motions. |
| May 24, 1985:      | plaintiffs file amended complaint asserting they have an easement based on the 1856 plat. |

Consolidated complains that for more than two years following this court's order remanding the case to allow plaintiffs to amend their complaint, the plaintiffs "did essentially nothing to prosecute their claim." Defendant claims that in the interim it completed construction of its elevator and drying system, and it was thereby prejudiced by the plaintiffs' delay. We do not agree.

First, while we do not approve of the delay of approximately one year between the time this case was remanded and the filing of plaintiffs' amended complaint, we do not find such a delay to be so unreasonable as to bring the equitable doctrine of *laches* into play. Furthermore, we note that Consolidated did not appear to be in any particular hurry to conclude the litigation. More than a year elapsed between the filing of the amended complaint and Consolidated's answer to that complaint. Plaintiffs then promptly filed their answer to the defendant's affirmative defenses and commenced discovery. We find no undue delay by the plaintiffs.

Second, we do not believe that the defendant was prejudiced by any delay. A mere lapse of time will not invoke the doctrine of *laches*. (*Weaver v. Watson* (1984), 130 Ill. App. 3d 563, 474 N.E.2d 759.) The defendant must show that the delay " 'caused him to pursue a course different from what he would have otherwise taken' " (*DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 136, 418 N.E.2d 413, 417, quoting *People ex rel. Casey v. Health & Hospitals Governing Comm'n* (1977), 69 Ill. 2d 108, 115, 370 N.E.2d 499, 502). The construction of the railroad tracks and related structures on Commercial Avenue was completed

*before* this court issued its order remanding the case. Indeed, the defendant sought to have the plaintiffs' initial appeal to this court dismissed on the ground that completion of the construction had rendered the controversy moot. (*Crain Enterprises, Inc. v. City of Mound City* (1982), 109 Ill. App. 3d 1223, 451 N.E.2d 1045 (unpublished Rule 23 order).) Throughout the course of this litigation the defendant has evidenced its intent to complete its facility despite the plaintiffs' objection. We find the defendant's suggestion that it was prejudiced by the plaintiffs' inactivity to be disingenuous and without merit.

Defendant Consolidated also contends that the trial court erred in finding it was without discretion to balance the equities of the case. A court of equity will normally balance the hardship imposed on a defendant by a proposed injunction against the benefit to be derived by the plaintiff. (See, *e.g.*, *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 192 N.E.2d 384; *Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 258 N.E.2d 811; *Stroup v. Codo* (1965), 65 Ill. App. 2d 396, 212 N.E.2d 518.) "[I]f an encroachment is unintentional and the cost of removing it is great, and the corresponding benefit to the adjoining landowner is small and damages can be had at law, courts will ordinarily refuse to grant injunctive relief and not require the offending party to remove the encroachment." (*Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 138-39, 443 N.E.2d 804, 808.) The record indicates that the benefits derived by the plaintiffs from the injunction consist of: (1) eliminating the need for plaintiffs to travel an extra 750 feet between their warehouse and the manufacturing facility; and (2) reducing the frequency of occasional blockage of First Street by trains loading or unloading at Consolidated's facility. These benefits are small in comparison to the large cost of removing the offending rail lines and structures. Moreover, the trial court found that the balance of the equities "clearly favor[s] the public and the defendants." The court, however, citing *Calhoon v. Communications Systems Construction, Inc.* (1986), 140 Ill. App. 3d 1012, 489 N.E.2d 23, believed that it had no discretion to refuse injunctive relief because it found that defendant Consolidated had acted intentionally.

In *Calhoon* this court held that the trial court erred in not issuing an injunction requiring the defendant cable company to remove its lines and equipment from utility poles located on the plaintiff's property. The plaintiff had informed the defendant that it was trespassing on his property, but the defendant continued its operation despite the protest. The defendant argued that its encroachment should be deemed unintentional because it believed it had the benefit of the util-

ity company's easement under a "pole lease agreement" with the company, and that its activities were sanctioned by the defendant's cable franchise agreement with the county. This court stated:

> "One who knows of a claim to land which he proposes to use as his own proceeds at his peril if he goes forward in the face of protest from the claimant and places structures upon the land. [Citations.] Mere belief in one's right, no matter how honestly and reasonably entertained, is no justification for preventing removal of the offending structure, nor is great expense of removal, when there has been a deliberate invasion of a plaintiff's title to real estate and protest, followed by resort to the courts to ascertain the legal rights of the parties. [Citation.] The encroachment will be deemed deliberate if made after due warning. [Citations.] The duty of the courts is to protect rights, and innocent complainants cannot be required to suffer loss of their rights because of expense to the wrongdoer." *Calhoon*, 140 Ill. App. 3d at 1016-17, 489 N.E.2d at 26-27.

Consolidated argues that *Calhoon* is distinguishable from the instant case because in *Calhoon* the defendant deliberately invaded the plaintiff's land despite his claim of trespass. Consolidated asserts, on the other hand, that it had no notice of the plaintiffs' claimed easement rights until May of 1985, long after it had completed construction. While the defendant admits that the plaintiffs objected to Consolidated's proposed plan before any construction began, it contends that the plaintiffs' objections were based on the validity of the proposed ordinances and never included an assertion of private easement rights. Consolidated concedes that it acted at its peril with regard to the plaintiffs' claim that the ordinances were invalid, but insists that it cannot be deemed to have willfully disregarded rights which were never asserted.

In response to Consolidated's argument, the plaintiffs maintain that it has always been their position that the defendant's actions were improper and interfered with the plaintiffs' rights. Plaintiffs contend that all the allegations necessary to show the existence of an easement in Commercial Avenue were contained in the original complaint.

Our review of the original complaint reveals the following salient paragraphs:

> "(4) That Commercial Avenue is a public thoroughfare situated within the corporate limits of the City of Mound City, Illinois, and now is being used and has been used for a great number of years by the general public, including the above-named

plaintiffs, together with the officers, employees, customers and patrons of plaintiff Crain Enterprises, Inc.

(5) That the property of the plaintiff, Crain Enterprises, Inc. is bounded on the west by the said Commercial Avenue and on the south by East First Street and on the north by East Second Street, the latter two streets intersect with the said Commercial Avenue.

(6) That plaintiff Crain Enterprises, Inc. has a factory on its property adjacent to Commercial Avenue and East First and East Second Streets aforesaid, and it finds it most convenient to use said Commercial Avenue, East First Street, and East Second Street for access to its property.

\* \* \*

(11) That pursuant to the aforesaid Ordinance, defendant Behimer and Kissner, Inc. is authorized to construct and operate a receiving facility beneath such railroad tracks or siding as aforesaid upon Commercial Avenue at the northwest corner of the intersection of Commercial Avenue and Pennsylvania Avenue. That said receiving facility is to be constructed upon property which has heretofore been used for street purposes. That the aforesaid is an effort on the part of the defendant city to grant a part of a public street to a private corporation for private use and profit and to the detriment of the plaintiffs and the general public.

(12) That the closing of Commercial Avenue aforesaid to motor vehicle traffic and the use of same as a railroad siding and receiving facility by defendant Behimer and Kissner, Inc. constitute a hazard and inconvenience to the travelling public, including plaintiffs.''

We agree with Consolidated that the allegations contained in the plaintiffs' original complaint were not sufficient to apprise the defendant of any claim of a private easement right. No mention is made of the 1856 plat upon which the plaintiffs' claim is based, nor is the term "easement" ever used. Furthermore, the language of the complaint indicates that the injury to the plaintiffs—the closing of Commercial Avenue—is the same as that shared by the general public, suggesting that plaintiffs are not asserting any private right of access.

Is an objection by the plaintiffs based on one ground, upon which the defendant ultimately prevailed, sufficient notice of all grounds for objection so that the defendant's action should be deemed intentional? We do not believe so.

"An encroachment is 'intentional' if the owner either pro-

ceeded to construct after notice of the encroachment, or in ascertaining the boundary or completing the construction failed in the exercise of precaution so as to indicate a wilful disregard of the other owner's rights." *Calhoon*, 140 Ill. App. 3d at 1016, 49 N.E.2d at 26.

In the instant case the basis of the plaintiffs' objection, that the ordinance allowing construction of the railway was invalid, was rejected by the trial court and this court. The plaintiffs did not assert their claim of a private easement right until long after construction was completed. The defendant therefore did not proceed in the face of notice of encroachment because the plaintiffs did not claim to have a private property interest in Commercial Avenue until May of 1985. "The test of the adequacy of notice is whether it clearly apprises a defendant of the claims to be defended against and whether the defendant, on the basis of the notice given, could anticipate the possible effects of the proceeding." (*Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 1018, 369 N.E.2d 179, 182.) We believe that the notice requirement necessary to deem an encroachment "intentional" should be strictly construed. This is because, under *Calhoon*, an intentional encroachment removes the trial court's discretion to balance the equities of the case and prevents it from fashioning a remedy which accommodates the interests of all the parties. Before such a potentially harsh rule may be invoked, we believe that it must be clear from the record that the defendant acted without regard to the plaintiffs' *property interest* in the disputed parcel. Defendant Consolidated had no notice of plaintiffs' claimed easement until construction was complete. Also, given the suggestion in *Rexroat v. Thorell* (1982), 89 Ill. 2d 235, 433 N.E.2d 235, that such easements survive only when reasonably necessary for ingress and egress, the plaintiffs' private interest in the street was not readily apparent or easily discoverable. We hold, therefore, that the defendant did not intentionally encroach on the plaintiffs' easement rights, and the trial court erred in finding that it was without discretion to balance the equities of the case. We note that the trial court found that the equities favor the defendant. We wish to make clear, however, that our holding does not foreclose the trial court, on remand, from issuing some type of injunctive relief. Rather, we hold that the trial court is not required to issue the mandatory injunction sought by the plaintiffs, but is free to use its equitable powers to fashion a remedy which it deems appropriate. If the court finds that injunctive relief is not warranted, it may wish to consider allowing the plaintiffs to amend their complaint to include a count for damages. In view of our

decision, we need not address Consolidated's other arguments.

Based on the above, we reverse the finding of the circuit court of Pulaski County granting plaintiffs Crain Enterprises injunctive relief and remand for further proceedings consistent with this opinion. We affirm the judgment of the circuit court for the defendants Mound City and Consolidated Grain and Barge Company with regard to the validity of ordinance Nos. 589, 612 and 625.

Affirmed in part; reversed and remanded in part.

GOLDENHERSH and RARICK, JJ., concur.