29 October 1999

No. 2--98--1421 

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

JONATHAN SPAFFORD WHITLOCK, as  ) Appeal from the Circuit Court

Trustee of the Spafford Estate  )  of Winnebago County.

Trust Dated October 23, 1987, ) 

     )

Plaintiff-Appellant,  )  No. 97--CH--91                                                  )      

v.                              )

) 

HILANDER FOODS, INC.,           )

                                )

Defendant-Appellee and  ) 

     Third-Party Plaintiff      )

                                )

(Scandroli Construction  )

Company; Northern Illinois  )

Service Company; McDermaid  )

Roofing and Insulating Company; )

Area Mechanical, Inc.; Morse  )

Electric Inc.; and Air      )  Honorable

Systems of Rockford, Inc.,      )  J. Todd Kennedy,

Third-Party Defendants).        )  Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Jonathan Spafford Whitlock, as land trustee, holds the title to property directly south of property on which defendant, Hilander Foods, Inc., has long operated a grocery store.  Recently, defendant built an addition to the store.  The south retaining wall of the addition is on defendant's property, but the underground footings of the wall encroach on plaintiff's property.  Plaintiff sued for a mandatory injunction compelling defendant to remove the encroachment and for other relief.  The trial court granted defendant summary judgment (see 735 ILCS 5/2--1005(c) (West 1998)), holding that, (1) as a matter of law, plaintiff was guilty of 
laches
; and (2) on the merits, plaintiff could not make out a sufficient case for a mandatory injunction.  Plaintiff appeals.  We reverse and remand the cause.

The facts require recitation in some detail.  On March 11, 1997, plaintiff filed a complaint alleging the following facts.  Plaintiff is the trustee of land (the Spafford property or plaintiff's property) adjacent to the land defendant leases.  Defendant operates a supermarket on its land.  In September 1996, defendant started building an addition to its store.  The south retaining wall of the addition borders the north line of plaintiff's property.  Although plaintiff allowed defendant to use his property during the construction, defendant made several unauthorized incursions.  In particular, the footings for the south retaining wall encroached about 1.7 feet onto plaintiff's property.  When plaintiff complained, defendant assured him that it would agree to compensate him for the encroachment.  However, defendant had refused to do so.  Plaintiff asked the court to order the removal of the footings, to enjoin defendant from constructing or maintaining improvements on plaintiff's property, and to require defendant to pay for past encroachments.

Defendant's answer admitted that the footings were on plaintiff's land, but it denied that plaintiff had objected to the encroachment.  Defendant also asserted the defenses of 
laches
, waiver, and estoppel, alleging that plaintiff had known of defendant's plans and did not object as the construction was taking place.  Also, according to defendant, the new footings simply took the place of ones that had been there for the old south wall for 40 years without protest. Defendant claimed that plaintiff sought to interfere with the construction only after it had been completed at a cost of about $1.5 million; that plaintiff's six-month delay in filing suit was unreasonable; and that plaintiff's conduct in that interim was inconsistent with his demand for injunctive relief.

Defendant also filed a third-party complaint against a variety of contractors.  All of these, except Scandroli Construction Company, were eventually dismissed from the suit before the final judgment on appeal here. 

In ruling on defendant's request for summary judgment, the trial court considered the depositions of plaintiff, his wife, Nancy Whitlock, and defendant's treasurer, Joseph Castrogiovanni.  Also before the court was correspondence between John Kinley, plaintiff's attorney, and Robert Gosdick, defendant's attorney. 

At his deposition, plaintiff testified as follows.  He is a beneficiary of the trust that owns the Spafford property, where he has lived since 1989. In February 1996, at the first of two zoning hearings where defendant sought a variance for the project, Gosdick and Joseph Castrogiovanni told plaintiff that defendant wished to build up to the boundary line but that the addition would not affect plaintiff's property at all.  Having received this assurance, plaintiff did not object to the variance request then or at the second hearing a week or two later.  

As plaintiff expected, defendant began construction work in the second full week of September 1996.  About a week into the process, however plaintiff noted with surprise that the footings for the new south wall were clearly on his property.  Plaintiff's wife had noticed the new footings somewhat earlier.  Concerned, plaintiff and Nancy Whitlock met the next business day with Joseph Castrogiovanni at the site.  Plaintiff told Castrogiovanni that, if the footings stayed, plaintiff was "going to have a lease."  Castrogiovanni replied that they could work something out, whether at " 'a dollar a year or a thousand dollars a month.' " Believing defendant was willing to pay for the encroachment, plaintiff contacted Kinley but did not try to stop defendant from building the addition.  Plaintiff knew he had a legal right to tell defendant to get off of his property, but he wanted to be a good neighbor, and he trusted Castrogiovanni's assurances that his property would not be harmed.

About a week or two after the meeting at the site, plaintiff and John Castrogiovanni, defendant's secretary, happened to meet at defendant's store.  Kinley had sent defendant a proposed lease, and plaintiff told John Castrogiovanni he would like to get the lease signed as soon as possible.  Castrogiovanni replied only that he had talked to Gosdick, who was researching the matter, and that defendant would "work it out to [plaintiff's] satisfaction."

Aside from expressing concern about the encroaching footings, plaintiff complained repeatedly that defendant was exceeding its permission to use plaintiff's land and that the project was  causing various kinds of property damage.  On October 14, 1996, Kinley sent Gosdick a letter stating, in part, that, as of noon the next day, plaintiff's authorization for defendant to use the property would be withdrawn and any incursion onto the property would be a trespass.  Furthermore, according to the letter, defendant's right to use the property would be suspended until a number of matters were resolved, including compensation for the permanent encroachment caused by the footings for the new south wall.  On October 15, 1996, plaintiff attended a meeting at Gosdick's office.  In his deposition, plaintiff conceded that he did not regard the October 14 letter as a demand to remove the footings; rather, the intention of the letter was to insist that defendant get its people, trucks, and scaffolding off his property.  Plaintiff also allowed that, at the October 15 meeting, the parties may not have discussed the footings issue at all. 

In November 1996, plaintiff obtained a survey that showed that, although the new south wall was on defendant's property, the footings extended at least 18 inches onto his land.  Plaintiff could not say how far underground the footings were placed.  The new wall was three feet further south than the old retaining wall.  Plaintiff never saw any paperwork showing that the old wall's footings had been on his property.  About three or four weeks after the construction began, Joseph Castrogiovanni told him that the old footings had been on plaintiff's side.  Plaintiff doubted this, as the old wall had appeared to be at least a half foot north of the boundary line.  However, plaintiff, admittedly not an expert in construction, did not know whether the old footings had been on his side of the line.  He had never seen the footings for the old wall.

When asked what damage he believed the encroaching footings caused, plaintiff responded that he believed they interfered with his ability to develop his land, although he had not thought seriously about developing the property in the immediate future.  Plaintiff never gave defendant permission to place the footings on his property.  However, he did not flatly tell defendant to stop doing so, or to remove the footings, because he was counting on the Castrogiovannis' word that something would be worked out.

Nancy Whitlock provided the following testimony at her deposition.  She has no legal interest in the property but has lived there about a decade.  Before the construction started, defendant's agents never told her that defendant would have to come onto the Spafford property.  Although Whitlock attended neither zoning meeting, Joe Castrogiovanni told her the project would not interfere with the Spafford property.  Relying on this assurance, Whitlock did not object beforehand to the construction.  However, right after the footings were poured, she saw that they encroached on the Spafford property.  From September 1996, she wanted defendant to tear down the property, but plaintiff continued to hope the parties could work things out.

Starting in August 1996, Whitlock and Joe Castrogiovanni spoke at least six times, discussing both the encroaching footings and the harm defendant was doing to the soil and the vegetation.  Whitlock repeatedly told defendant's agents that the footings were on the Spafford property.  Asked at her deposition whether she ever demanded that defendant remove the footings, Whitlock replied that, early on, she told Joseph Castrogiovanni, "I believe these are on our side."  Whitlock never saw or learned of the footings for the original south wall.  Assuming they had been south of the boundary line, Whitlock could not say whether they had damaged the Spafford property.  She conceded that the new footings did not interfere with her use of the property.  To her knowledge, the Whitlock family had never tried to develop, subdivide, or sell the property.

We summarize Joseph Castrogiovanni's deposition testimony.  In February 1996, defendant applied for a zoning variance so it could build to the south property line.  At the zoning hearing, plaintiff told Castrogiovanni that he had no objection to defendant building up to the line or coming onto his property during the construction.  However, at that time, Castrogiovanni was not aware that the footings would encroach on plaintiff's property, and he and plaintiff did not discuss the footings at all.

When plaintiff and Castrogiovanni first met at the construction site, the old retaining wall had been removed and the footings for the new wall had been poured.  Plaintiff pointed out that the new footings were on his property.  Castrogiovanni agreed.  This was the first time he knew of the encroachment.  He did not ask plaintiff whether plaintiff would allow it, and he never tried to get plaintiff's written permission to put the footings on plaintiff's property.  However, as plaintiff never objected to the footings, defendant proceeded apace with the project.

The next meeting was at plaintiff's house.  Castrogiovanni and the Whitlocks discussed the above-ground damage the construction was causing, but they did not discuss the footings.  At a second  meeting at the site, the Whitlocks told Castrogiovanni that defendant had until noon the next day to remove its equipment from the property.  Defendant complied.

Castrogiovanni admitted he had no physical documentation of the location of the footings for the old south wall.  However, he was present when the old retaining wall was removed, and he had seen the old footings.  He noted that the new footings were in the same place as the ones that had been there for 40 years.

We summarize the correspondence between the parties' lawyers.  On September 23, 1996, Gosdick wrote Kinley that the new footings appeared to be 18 inches over the boundary line.  As he understood, plaintiff did not object to the footings but was concerned that defendant might make some sort of adverse possession claim.  Therefore, plaintiff could consider any such claim waived.  

On September 25, 1996, Kinley wrote that he had sent plaintiff a proposed lease dealing with both the encroachment and the temporary use of the Spafford property for construction.  Kinley enclosed a copy of the proposal, which would charge defendant $100 a year for 20 years to place its footings on the Spafford property.

A letter from Kinley to Gosdick, dated October 10, 1996, stated that the Whitlocks wanted a prompt meeting so they could learn (in part) "what compensation will be provided if the encroachment involves more than the building footings ***."  Also, plaintiff would not sign the lease Kinley had sent Gosdick.  By a letter dated October 10, 1996, Gosdick requested that the parties' scheduled meeting be delayed for two weeks until some of the work was finished.  On October 14, 1996, Kinley faxed Gosdick that the requested delay was unacceptable and that, as of noon the next day,  defendant's permission to use the Spafford property was suspended until the parties decided, among other issues, what compensation plaintiff would receive for the footings' permanent encroachment on plaintiff's property.

On November 5, 1996, Kinley wrote Gosdick that a survey showed that the footings encroached on plaintiff's property.  He enclosed a copy of the survey.  On November 8, 1996, Gosdick acknowledged receipt of the survey but said that he was not surprised; the old footings had been in exactly the same place, so defendant had made no new encroachment.  On January 9, 1997, Gosdick wrote Kinley about a recent meeting and to reply to a "settlement proposal."  The communication discusses various areas of disagreement but never specifically mentions the footings.  It does state that defendant is willing to pay $10,000 "as a full and final settlement for any damages done during the course of construction." 

On February 14, 1997, Kinley replied that the Whitlocks remained firm in demanding (1) $30,000 for the use of the Spafford property during construction and the reimbursement of various expenses and (2) $2,000 per year for 20 years as compensation for the encroaching footings.  Kinley added that, should defendant decline these terms, the Whitlocks would sue for a mandatory injunction to remove the footings.  On February 21, 1997, Gosdick replied that defendant stood by its settlement offer.  On March 11, 1997, plaintiff filed this suit.

In granting summary judgment for defendant, the trial court ruled first that defendant's encroachment was not the sort of "intentional" interference against which plaintiffs could seek a  mandatory injunction regardless of the balance of equities or hardships.  The court stressed that plaintiff did not initially object to the addition and that, when plaintiff became aware of the location of the new footings, he did not demand that they be removed but only that he be paid for the encroachment.  Also, the new footings simply took the place of the old ones and did not interfere with plaintiff's use of the property.  The court ruled second that 
laches
 barred the suit for injunctive relief because plaintiff waited six months to bring the suit, meanwhile allowing defendant to construct the addition at a cost of $1.5 million.  The court allowed plaintiff to proceed on a complaint for money damages, but plaintiff elected to forgo any suit for money damages.  The court entered an order dismissing the complaint and defendant's third-party complaint against Scandroli.  Plaintiff timely appeals. 

On appeal, plaintiff argues that the trial court erred in granting summary judgment on either substantive grounds or equitable grounds such as 
laches
, waiver, or estoppel.  For the reasons that follow, we agree with plaintiff that the trial court erred in resolving these issues by summary judgment.

Summary judgment is proper when the pleadings, depositions, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  Summary judgment is a drastic measure and should be granted only if the moving party is clearly entitled to it.  
In re Estate of Constantine
, 305 Ill. App. 3d 256, 259 (1999).  The trial court must construe all the evidence strictly against the movant and liberally in favor of the nonmovant.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  A plaintiff seeking to avoid summary judgment must provide some factual basis that arguably would entitle him to recover, but he need not prove his case at this preliminary stage.  
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 256 (1996).  Our review is 
de novo
.  
Espinoza
, 165 Ill. 2d at 113.

We agree with plaintiff that the trial court erred in concluding that, as a matter of law, the encroachment on plaintiff's property was not intentional.  Whether to categorize defendant's encroachment as intentional or unintentional is potentially of crucial significance.  Ordinarily, in deciding whether to order a defendant to remove an offending structure, the trial court must balance the hardship to the defendant against the benefit to the plaintiff; if the former is great and the latter slight, the court will ordinarily leave the plaintiff to his remedy at law.  
Nitterauer v. Pulley
, 401 Ill. 494, 505 (1948); 
Crain Enterprises v. City of Mound City
, 189 Ill. App. 3d 130, 144 (1989); 
Calhoon v. Communications Systems Construction, Inc.
, 140 Ill. App. 3d 1012, 1016 (1986).  However, if the encroachment is deliberate, the court may issue the injunction without considering the relative hardships.  
Ariola v. Nigro
, 16 Ill. 2d 46, 51-52 (1959); 
Calhoon
, 140 Ill. App. 3d at 1016.   

Here, the balance of hardships decisively favors defendant, as a mandatory injunction would require it to undo at least in large part a $1.5 million construction project, while the benefit to plaintiff would at most be far less clear.  Thus, if the trial court correctly decided that, as a matter of law, the footings were not an intentional or deliberate encroachment, it acted properly in granting defendant summary judgment.  However, we believe there is a genuine factual issue of whether defendant acted deliberately.

One who knows of a claim to land that he proposes to use as his own proceeds at his peril if he goes forward in the face of protest or warnings from the owner and places a structure on  the land.  
Ariola
, 16 Ill. 2d at 52; 
Calhoon
, 140 Ill. App. 3d at 1016.  Here, it is undisputed that the footings encroach on plaintiff's property and that, at some point, plaintiff told defendant that he would not simply accept the encroachment.  The evidence suggests that plaintiff did not protest the encroachment until after the footings were poured.  However, this proves little in itself, as the evidence suggests equally that plaintiff--and perhaps defendant--did not know in advance that defendant would encroach on plaintiff's property at all. 

A fact finder could infer that, when defendant's agents started to put in the footings, they knew or could easily have learned that they were standing on plaintiff's land as they worked.  In any event, a mistaken belief by defendant that it was on the right side of the line would not save it from an injunction if it could have ascertained the truth by using reasonable care.  See 
Ariola
, 16 Ill. 2d at 53.   There is also a factual basis to conclude that, soon after plaintiff realized that defendant intended to make permanent use of his property, he protested and put defendant on notice that it proceeded at its peril.  Joseph Castrogiovanni admitted that, after plaintiff made his displeasure known, defendant kept on building the new south wall even though it had not obtained a lease or other permission to use the property.

The record provides a basis to find that defendant knew that it was appropriating plaintiff's property and pressed ahead anyway.  Thus, the trial court erred in granting summary judgment on this basis.  We turn to the second ground on which the trial court relied: that, as a matter of law, plaintiff's suit for injunctive relief was barred by 
laches
.  We hold that this ground is also insufficient to support the judgment.

Laches
 will bar relief where, as a result of the plaintiff's unreasonable delay in asserting his right, the defendant has been misled or prejudiced.  
Tully v. State of Illinois
, 143 Ill. 2d 425, 432 (1991); 
Pettey v. First National Bank
, 225 Ill. App. 3d 539, 545 (1992).  Whether to apply 
laches
 rests within the trial court's discretion.  
Pettey
, 225 Ill. App. 3d at 546-47.  There are no fixed rules for when 
laches
 applies (
Ole, Ole, Inc. v. Kozubowski
, 187 Ill. App. 3d 277, 286 (1989)), and the court must examine all the circumstances, including the defendant's conduct (
Baylie v. Swift & Co.
, 283 Ill. App. 3d 421, 431 (1996)).  Thus, the court must ask whether the defendant has contributed to the delay of which it complains (
Baylie
, 283 Ill. App. 3d at 431) and whether the defendant knew it was violating a right and went ahead anyway in disregard of the consequences (
Pettey
, 225 Ill. App. 3d at 545). 

Given these standards, the trial court erred in holding that, as a matter of law, plaintiff's delay in bringing suit bars it from obtaining any relief.  This question turns on factual and equitable issues that ought not to have been resolved at the summary judgment stage.  Weighing in defendant's favor is that plaintiff did wait six months between discovering the existence of the footings and filing suit to have them removed and that, in this time, plaintiff  could see that defendant continued to build its addition at a substantial cost.  However, weighing in plaintiff's favor is that there is at least a factual issue of whether defendant contributed to this delay by incorrectly assuring plaintiff, perhaps in bad faith, that he would be suitably compensated for the permanent encroachment.  Also, there is some issue whether the equities favor defendant, in that it was aware early on of plaintiff's protests against the encroachment yet continued apace on the construction work without obtaining plaintiff's permission to do so. The existence of such genuine factual issues casts doubt on defendant's right to invoke the equitable doctrine of 
laches
 and thus bars summary judgment on this ground.

As did the trial court, defendant emphasizes the evidence that the footings for the new wall simply occupy the same space as those for the old wall and that it is not clear how plaintiff will be harmed.  However, whether the two sets of footings are equally intrusive, as well as the circumstances surrounding the existence of the old footings, are not well developed in the record before us.  Moreover, if plaintiff establishes that the encroachment was deliberate or intentional, he need not show that he will suffer substantial immediate harm from the violation of his property right.  See 
Pradelt v. Lewis
, 297 Ill. 374, 377 (1921); 
Pacemaker Food Stores, Inc. v. Seventh Mont Corp.
, 117 Ill. App. 3d 636, 647 (1983).

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded.

Reversed and remanded.

GEIGER and GALASSO, JJ., concur.