**BILLY JOE LARSON, a minor, by BILL LARSON, his guardian ad litem, Plaintiff,**

**v.**

**RAY McMOORE and SESE McMOORE, Defendants.**

---

**PEARLITA CANDY FUAVAI, Intervenor/Defendant.**

High Court of American Samoa
Land and Titles Division

LT No. 12-01

July 17, 2003

Before RICHMOND, Associate Justice, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Jeffrey Waller and Marshall Ashley
For Defendants, Tauivi Tuinei and Arthur Ripley, Jr.
For Intervenor/Defendant, Afoa L. Su`esu`e Lutu

## OPINION AND ORDER

This action concerns removal of a rock wall that allegedly blocks a right of way and diverts entrants across land owned by plaintiff Billy Joe Larson ("Billy Joe"), a minor, to reach other land. Defendants Ray McMoore ("Ray") and Sese McMoore ("Sese") (together "the McMoores") admit that they constructed the rock wall, but deny that the right of way exists and claim that the rock wall is entirely on their land. Even though the lands involved are individually-owned lands and the issue did not require the Secretary of Samoan Affairs' involvement under A.S.C.A. § 43.0302, upon the request of Bill Larson ("Larson"), Billy Joe's adoptive father, the Secretary informally mediated the issue, but without success. Larson then filed this action as Billy Joe's "next friend," without judicial appointment.

■ "Next friend" is a term that was developed at common law, usually for a person designated to prosecute a civil action on a plaintiff minor's behalf, while a "guardian ad litem" referred to a person appointed to present a defendant minor's defense. *See* 1 CALIFORNIA CIVIL PROCEDURE BEFORE TRIAL § 19.1 (3d ed. 1990). In current practice, however, the term "guardian ad litem" is more commonly understood and used whether the minor is a party plaintiff or defendant, *id.*, and is the usual designation in this jurisdiction. Both terms are still viable, provided the representative in this capacity is judicially appointed. T.C.R.C.P. 17(c). We therefore directed Billy Joe's counsel to have Larson appointed by the Court as Billy Joe's formal representative in this action, preferably as Billy Joe's guardian ad litem. This was done in due course.

## Discussion

### A. Factual Background

Four subdivided lots are involved.[1] The lots are within a larger parcel of land, in Ili`ili, American Samoa, originally owned by Ione Fe`a ("Fe`a") as his individually-owned land. The portion of the larger parcel at issue is cone-shaped with the apex at the north end. For purposes of this discussion, we designate the lots by number. Lot 1 encompasses the apex and is owned by Intervenor/Defendant Pearlita Candy Fuavai ("Fuavai"). Fuavai was not originally made a party to this action. After the trial, the Court added Fuavai as a necessary party for full and proper adjudication of the issues, as she is owner of land accessed by crossing Billy Joe's land with the rock wall in place. Lot 2 is the second lot southwest down the left side. Sese owns Lot 2. Lot 3 is the first lot southeast down the right side of the cone. Billy Joe is the beneficial owner of Lot 3. Lot 4 lies between Lots 2 and 3 south of Lot 1. Ray, Sese, or the McMoores hold the title to Lot 4, informally in trust for the McMoore's grandchildren.

During the planning for the subdivision of the larger parcel, in 1989 and 1990, Fe`a instructed the surveyor to provide for rights of way ("ROWs" when plural and "ROW" when singular) to ingress and egress the lots. Legal descriptions of these ROWs, however, were not

---

[1] We take judicial notice of the consolidated actions LT Nos. 14-93, 20-93, 10-95, 20-96, and 1-98 to complete certain details of the land transactions set forth below in the factual findings. We also take judicial notice and have inspected the Territorial Registrar's records of these transactions.

Additionally, we have appended to this opinion and order a not-to-scale diagram of the subdivided area, marked Exhibit A, to provide a picture of the area described below.

officially recorded with the Territorial Registrar. Nevertheless, the evidence, based on the registered deeds and subsequent surveys, affirmed the existence of the ROWs, intended for the benefit and enjoyment of all the adjoining landowners. We designate the relevant ROWs by letter. ROW A lies between Billy Joe's Lot 3 and the McMoores' in-trust Lot 4, abuts with Sese's Lot 2 and ROW C at its north end, and is 15' wide. Ray was instrumental in developing and still assists in maintaining ROW A, even though the McMoores can access Lot 2 and Lot 5 without using ROW A. ROW B lies between Lot 1 and Billy Joe's Lot 3, would provide access from the end of ROW A to Lot 1, and is also 15' wide. ROW C lies between Lot 1 and Sese's Lot 2, extends north from the end of ROW A, and is 7.5' wide.[2] The McMoores profess to no knowledge of the existence of ROW B and ROW C.

In 1990, Fe`a conveyed approximately seven acres of the larger parcel, in two separate transactions of three acres and four acres, to Fuga Teleso ("Fuga"). Lot 3 lies within the three-acre transaction. In 1990, Fuga conveyed Lot 3 to Eletise M. Wolman ("Eletise"). In 1994, Eletise conveyed Lot 3 to Senovefa Pritt ("Senovefa"). Eletise and Senvoefa are native Samoans entitled to own land in American Samoa; their husbands, Lewis Wolman ("Lewis") and Ray Pritt, are nonnatives and are not authorized to acquire title to individually-owned land in the territory. A.S.C.A. § 37.0204(b). In 2000, Senovefa conveyed Lot 3 to Billy Joe, with Margie Faaita holding title as trustee until Billy Joe reaches age 18.

Also in 1990, Fe`a conveyed Lot 1 to Fuavai. This transaction was recorded with the Territorial Registrar. The evidence initially suggested that Lot 1 was later subdivided into two unrecorded lots, now separately occupied. After Fuavai was joined as a necessary party and further evidence was introduced, it became clear that Fuavai did not subdivide Lot 1, the present separate occupants of portions of Lot 1 are trespassers, and Fuavai timely objected to their occupancy and plans, if necessary, to take formal action to evict these occupants.

In 1991, Fe`a conveyed Lot 2 to Sese. It is unclear under the evidence whether Ray, Sese, or the McMoores hold the title to Lot 4, or the year when this title was acquired (though clearly some time after the 1991 conveyance to Sese but before the trial of this action). Though also unclear, it appears that Fuga was the grantor of the Lot 4 transaction,

---

[2] It appears that Fea intended ROW C to be 15' wide, taking the additional 7.5' from the Sese's Lot 2. However, that extension is not clearly ascertained from the evidence and is not presently an issue before us.

as he owned the major portion of the larger parcel after his two acquisitions from Fe'a in 1990.[3]

At the time Fe'a conveyed Lot 2 to Sese, or shortly after, a meeting on site was held. The attendees included Lewis representing his wife Eletise, and Ray for himself and his wife Sese, Fuga, and Sina Fe'a ("Sina") representing her father Fe'a. Sina handled most of Fe'a's land transactions. Neither Fuavai nor her representative was present. The McMoores had recently had Lot 2 resurveyed. They understood that the northeast boundary of Lot 2 immediately abutted the southwest boundary of Lot 1, thus encompassing ROW C, and that the southeast boundary of Lot 1 immediately abutted the northwest boundary of Billy Joe's Lot 3, thus encompassing ROW B. The attendees, Lewis included, discussed access to Lot 1 from the north end of ROW A, and agreed to permit use of a strip along the northwest boundary of Lot 3, then owned by Eletise, for such access.

In 1994, the McMoores constructed the rock wall Billy Joe wants removed. The rock wall begins on the southeast boundary of Lot 2 and extends from there across the south end of ROW C to the southwest corner of ROW B. Because of the rock wall's positioning, persons are prevented from entering ROW B from ROW A and must use the stretch of Lot 3 permitted by Lewis to access Lot 1.

## B. Legal Analysis

Based on the evidence, there is no legal basis that allows the rock wall to remain standing.

 The rock wall is not situated entirely on Sese's Lot 2. Instead, it physically encroaches on the 7.5' ROW C and cuts off access to ROW B while diverting traffic across Billy Joe's Lot 3. By both encroaching on ROW C and causing others to stray onto Lot 3, the McMoores are committing a trespass by their rock wall. *See Letuli v. Le'i*, 22 A.S.R.2d 77, 82 (Lands and Titles Div. 1992); RESTATEMENT (SECOND) OF TORTS § 158 (1965) ("One is subject to liability to another for trespass [if he] enters land in the possession of the other, or causes a thing or a third person to do so").[4]

---

[3] At the present time, the conveyance of Lot 4, whether by Fe'a or Fuga, has been neither received nor recorded in the Territorial Registrar' Office.

[4] There was some evidence to support the McMoore's contention that Lewis, representing Eletise when she owned Lot 3, acquiesced to the McMoores' construction of the rock wall knowing that it would cause traffic to divert onto Lot 3. And, there was some evidence that Lewis' permission was intended to be permanent. Thus, the McMoores'

■ Whether or not to issue a mandatory injunction for removal of an encroachment, when the encroachment was not intentionally erected on another's property, is within our discretion. *See Whitlock v. Hilander Foods, Inc.*, 720 N.E.2d 302, 307 (Ill. App. Ct. 1999) (no balancing if encroachment was deliberate); *Ridgway v. TTnT Dev. Corp.*, 26 S.W.3d 428, 433 (Mo. Ct. App. 2000) (same); Annotation, *Mandatory injunction to compel removal of encroachments by adjoining landowner*, 28 A.L.R.2d 679 § 8 (1953) (hereinafter "Annotation"). We do not find that the McMoores intentionally erected the rock wall outside Sese's Lot 2 on ROW C; instead, they were simply mistaken about the property line. Thus, we must "balance the hardship to the defendant[s] against the benefit to the plaintiff; if the former is great and the latter is slight, the court will ordinarily leave the plaintiff to his remedy at law." *Whitlock*, 720 N.E.2d at 307; Annotation at § 6.

In this case, we find that the balance tips in favor of removal. Though the cost of the removal of the wall is not expressly in evidence, it will be relatively nominal, even done by inexpensive self-help, and the hardship to Fuavai and Billy Joe wins out. As of now, Fuavai is not able to fully exercise her rights to the enjoyment of her Lot 1. The rock wall renders nugatory ROW B and ROW C, which were intended as access to Lot 1. Instead, the wall forces Fuavai to enter Lot 1 by crossing Lot 3. Moreover, the 7.5' encroachment on ROW C cannot be considered

---

argument that they acquired an irrevocable license is not frivolous. An irrevocable license, sometimes referred to as an easement by estoppel, arises where:

> [an] owner or occupier [of land] permit[s] another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, and the user did substantially change position in reasonable reliance on that belief.

*Vaoga v. Wong*, 7 A.S.R.3d 246, 248 (Land and Titles Div. 2003) (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10(1) (2000)) (alterations in original).

But, besides the need for caution in extending equitable land rights in American Samoa, we need not reach this issue. Firstly, because any permission was merely oral, no explicit easement was granted. Thus, it is not clear that Billy Joe is bound by Lewis' actions. Secondly, Lewis did not have the sole authority to grant the McMoores permission to build a wall on property outside their Lot 2—in this case ROW C. Therefore, at the very least, there is no justification for that encroachment.

slight. *But see Whitlock*, 720 N.E.2d at 307-08; *Generalow v. Steinberger*, 517 N.Y.S.2d 22, 24 (1987). Additionally, Billy Joe is injured because parties entering Lot 1 will continue to use his Lot 3. Unless the rock wall comes down, the trespass on Lot 3 will be permanent, also depriving Billy Jo of the lawful enjoyment of his land. *See Thompson v. Toluao*, 24 A.S.R.2d 127, 132-33 (Land and Titles Div. 1993) ("Actual physical interference with the use and enjoyment of another's land constitutes the most common type of nuisance and is properly subject to the issuance of a permanent injunction"); *Letuli*, 22 A.S.R.2d at 86 ("continuing trespass that can be abated is properly eliminated by injunctive relief"); A.S.C.A. § 43.1302.

## Order

The McMoores shall remove the rock wall from ROW C. Removal shall be made within a reasonable time, not to exceed 90 days.

It is so ordered.